UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, JAMES S. JORGENSEN, not individually but as Administrator of the Funds, <br><br> Plaintiffs, <br><br> v. <br><br> GREEN DEMOLITION CONTRACTORS, INC., an Illinois Corporation, M.B. RUFF INCORPORATED, an Illinois corporation, MICHAEL J. BROUGH, individually, and THOMAS BROUGH, individually, <br><br> Defendants. | No. 15 C 5633 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

After conducting an audit of Green Demolition Contractors, Inc. ("Green Demolition") and M.B. Ruff Incorporated ("M.B. Ruff"), Plaintiffs—Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and James S. Jorgensen, not individually but as administrator of the Funds (collectively, the "Funds")—brought this action to collect allegedly unpaid contributions and union dues uncovered by that audit. The Funds complain that Green Demolition violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and seek to hold M.B.

Ruff liable for those violations on an alter ego theory. The Funds also seek to pierce the corporate veil against Michael J. Brough ("Michael") and Thomas Brough ("Thomas") and hold them liable for common law fraud. Defendants have filed a motion to dismiss [13], which is denied. Although discovery may prove otherwise, the Funds have sufficiently alleged facts to allow their alter ego theory to proceed at this stage. Their fraud claim against Thomas and Michael is not preempted, as the alleged fraud exists independent of any obligations supplied by Green Demolition's collective bargaining agreement. Finally, because the Court is allowing the claims against Green Demolition and M.B. Ruff to proceed, the Funds' request to pierce the corporate veil also survives.

## BACKGROUND[1]

Green Demolition is a party to successive collective bargaining agreements (the "CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). Green Demolition became a party to the CBA on July 13, 2009. The CBA requires Green Demolition to make contributions on behalf of its employees for covered work as defined by the CBA. Green Demolition must also submit monthly reports identifying employees covered by the CBA and the amount of contributions to be remitted to the Funds on their behalf. The Funds are authorized to collect union dues from employers that should have been or have been deducted from the wages of covered employees. They are also authorized to act as agents in collecting contributions due to the Funds from employers as provided for in their respective CBAs.

---

[1] The facts in the background section are taken from the Funds' complaint and exhibits attached thereto and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

M.B. Ruff was established in 1995. Green Demolition was incorporated on July 30, 2007. Both companies perform demolition services. During the relevant time period, both Green Demolition and M.B. Ruff operated out of the same place: 1427 W. Dickens, Suite 200, Chicago, Illinois. The companies have common ownership and management. Green Demolition is 25% owned by Thomas and 75% owned by Michael. Since 2012, Thomas has been the sole owner of M.B. Ruff, although Michael was listed as its sole owner from 2009 through 2011. The two companies have used the same employees, and employees who have performed work on Green Demolition projects have been paid from M.B. Ruff's accounts. For example, Reymundo Hernando, Alberto Hernando, Francisco Ruiz, and Oscar Pineda performed work for Green Demolition on Green Demolition projects at the University of Chicago, Chicago City Hall, Morton East High School, and 500 West Madison. But they were paid for that work from M.B. Ruff's accounts. This occurred under the direction and control of Green Demolition employees and supervisors.

Additionally, Thomas and Michael caused and directed Green Demolition not to pay wages, benefit contributions, and dues for individuals who performed covered work under the CBA to the Funds. As a result, they submitted or authorized the submission of false benefit forms to the Funds, as those forms did not include all individuals who performed work on covered projects for Green Demolition. They also misrepresented their ownership interests in Green Demolition and M.B. Ruff during previous audits

The Funds conducted an audit of Green Demolition that was finalized on January 28, 2015. The audit also included M.B. Ruff employees because M.B. Ruff "was performing jurisdictional work during the audit period according to affidavits from former employees of the company." Doc. 1 at 21. The audit found that Green Demolition and M.B. Ruff did not report

3

$884,755.34 in contributions between July 13, 2009 and March 31, 2014. They also did not withhold or remit $20,064.51 in union dues over that same time period. Under the CBA, liquidated damages and interest are also due on late or unpaid contributions and unpaid union dues, with Green Demolition also responsible for the audit costs. The company conducting the audit submitted a bill to the Funds for $6,695.82.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Alter Ego Liability (Counts I and II)

The Funds claim that M.B. Ruff is Green Demolition's alter ego and therefore bound by the CBA. Consequently, the Funds seek to recover for benefit contributions and union dues that both M.B. Ruff and Green Demolition have allegedly failed to make between July 13, 2009 and March 31, 2014, contending that employees performed work on projects for Green Demolition

4

but were paid through M.B. Ruff accounts or that Green Demolition used M.B. Ruff employees to perform work covered by the CBA. M.B. Ruff argues that the Funds' alter ego claim fails as a matter of law and must be dismissed.

Although not a signatory to the CBA, M.B. Ruff may be bound by the CBA if it is found to be Green Demolition's alter ego. The alter ego theory "focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987) (quoting *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18, 24 (1st Cir. 1983)). Factors relevant in assessing an alter ego claim include "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998). But the critical issue is unlawful motive and intent. *Centor Contractors*, 831 F.2d at 1312. The analysis is fact intensive. *Chicago Dist. Council of Carpenters Pension Fund v. Vacala Masonry, Inc.*, 946 F. Supp. 612, 617 (N.D. Ill. 1996).

Here, the Funds allege that Green Demolition and M.B. Ruff operated from the same location and both performed demolition services. They also allege that Green Demolition and M.B. Ruff are owned and managed by the same individuals. More importantly for the alter ego inquiry, they allege that the two companies used the same employees for their projects, and that "[e]mployees who have worked on projects for Green Demolition have been paid through the accounts of MB Ruff to avoid the payment of wages and benefits required to be paid under the terms of the [CBA]." Doc. 1 ¶ 16. The complaint provides specifics for four individuals who allegedly performed work on several demolition and construction projects for Green Demolition

under the direction of Green Demolition employees and supervisors and were sometimes "badged" as Green Demolition employees but were paid through M.B. Ruff's accounts. *Id.* ¶ 27. The audit also states that it includes M.B. Ruff employees who were performing "jurisdictional work during the audit period," based on affidavits the Funds had obtained from former M.B. Ruff employees. Doc. 1 at 21, 30. This is sufficient under notice pleading standards to allow the Funds to proceed to discovery on their alter ego claim.

M.B. Ruff argues, however, that the Funds are pursuing a reverse alter ego theory that has been rejected by the courts. The reverse alter ego theory has been explained as "a *non-union* employer allegedly opening a *union* company to avoid *future* collective bargaining obligations." *S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1032 (9th Cir. 2009). But even though Green Demolition was established after M.B. Ruff, courts have recognized that a company may "exist[ ] side-by-side with its alleged alter ego." *RKN Concrete Constr., Inc. v. Laborers' Pension Fund*, No. 13 C 9153, 2015 WL 1888513, at *8 (N.D. Ill. Apr. 24, 2015) (quoting *Vacala Masonry*, 946 F. Supp. at 618). The timing of when the companies were established is not dispositive and does not turn this into a reverse alter ego claim. Indeed, the Funds' theory is more in line with a traditional alter ego claim, as the Funds allege that Green Demolition, a union company, used M.B. Ruff, a non-union company, to avoid its collective bargaining obligations. *See Rodin & Co.*, 558 F.3d at 1032 (explaining that a "traditional alter ego claim consists of a *union* employer opening a *non-union* company to avoid *existing* collective bargaining obligations"). Thus, at this stage, this does not appear to be a case where the Funds are trying to impose obligations on non-covered work.

M.B. Ruff also argues that the complaint does not include allegations that M.B. Ruff's employees are Union members or sought or received benefits from the Funds during the audit

6

period, meaning that contributions were not required and the Funds were not damaged. But the complaint alleges that work was performed on Green Demolition projects but paid through M.B. Ruff, violating the terms of the CBA. Drawing all inferences in the Funds' favor, the Court finds this sufficient to suggest that contributions were required for this work and that the Funds were damaged as a result. Whether this turns out to be the case must be explored in discovery.

Because of the fact intensive nature of the alter ego analysis, which focuses on unlawful intent or motive, the Court cannot conclude at this stage that M.B. Ruff is not Green Demolition's alter ego. *See Cent. States, Se. & Sw. Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1288–89 (7th Cir. 1996) (affirming judgment entered for defendant on alter ego theory after denial of summary judgment motion and bench trial, noting that although plaintiff's "allegations seem viable in the abstract," the evidence presented to the district court did not meet plaintiff's burden of proof); *NECA-IBEW Pension Trust Fund v. Bays Elec., Inc.*, 894 F. Supp. 2d 1071, 1084–86 (C.D. Ill. 2012) (ruling on alter ego theory after bench trial); *Weiland v. Linear Constr. Ltd.*, No. 00 C 6172, 2003 WL 1565846, at *10 (N.D. Ill. Mar. 24, 2003) (same); *Vacala Masonry*, 946 F. Supp. at 617 (addressing alter ego theory on motion for summary judgment). The Funds have plausibly set forth allegations that provide M.B. Ruff with sufficient notice of the claim against it and suggest potential unlawful motive or intent. Although discovery may ultimately prove otherwise, this is sufficient to proceed against M.B. Ruff on an alter ego theory at the motion to dismiss stage.[2] *See Cent. Ill. Carpenters Health & Welfare*

---

[2] Almost as an aside, Green Demolition states in connection with M.B. Ruff's alter ego argument that the Funds' claim against Green Demolition must be dismissed because the "only potentially viable claim the Funds may have is for allegedly unpaid union contributions and dues relating to the four Green Demolition employees," which "is completely lost within the avarice of its claim against M.B. Ruff." Doc. 14 at 11. But admitting the viability of such a claim is not a reason to argue for its dismissal. Thus, the claim against Green Demolition for unpaid contributions will also proceed to discovery. For this reason, and because the claim against M.B. Ruff is also proceeding, the Court need not address the Funds' argument, raised for the first time in its response to the motion to dismiss, that Green Demolition can be

*Fund v. J.L.H. Interior Constr., Inc.*, No. 07-3121, 2007 WL 3231416, at *3–4 (C.D. Ill. Oct. 30, 2007) (denying motion to dismiss and finding that plaintiffs had alleged sufficient facts to support alter ego theory); *cf. Cent. States, Se. & Sw. Areas Pension Fund v. Denny*, 250 F. Supp. 2d 948, 955–56 (N.D. Ill. 2003) (granting motion to dismiss alter ego claim where plaintiff's allegations were not sufficient to support theory that the second company was the alter ego of the first company at the time of the alleged ERISA violation).

## II.  Fraud (Count III)

The Funds also bring a fraud claim against Michael and Thomas, claiming that they caused Green Demolition to fail to pay the appropriate wages and benefit contributions for individuals who performed or subcontracted work that was covered by the CBA by directing, authorizing, or submitting false reports on Green Demolition's behalf.  Thomas and Michael argue that ERISA preempts this claim.

ERISA's preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A law is found to "relate to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983).  The Seventh Circuit has identified three instances where a state law has a connection with or reference to an employee benefit plan: "when it (1) mandate[s] employee benefit structures or their administration; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to ERISA." *Trs. of AFTRA*

---

held responsible for any work subcontracted to M.B. Ruff regardless of whether M.B. Ruff is found to be Green Demolition's alter ego because of the CBA's subcontracting provision. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("[A] plaintiff may not amend his complaint in his response brief."). If the Funds plan to assert this theory, they should move to amend their complaint.

*Health Fund v. Biondi*, 303 F.3d 765, 775 (7th Cir. 2002) (alteration in original) (citations omitted) (internal quotation marks omitted). A common law cause of action, like the fraud asserted here, will fall into one of these categories when "premised on the existence of an ERISA plan" or reliant "for its very operation, on a direct and unequivocal nexus with the ERISA plan." *Id.* at 778. Because common law fraud is a "traditional area of state law regulation," Thomas and Michael have the "considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Id.* at 775 (citation omitted) (internal quotation marks omitted).

Thomas and Michael do not specifically address *Biondi*'s three categories, instead arguing generally that ERISA is the exclusive enforcement mechanism for underpayments to a benefit plan. But in a case directly addressing this issue, *Laborers' Pension Fund v. Lake City Janitorial, Inc.*, the court found that ERISA did not preempt a common law fraud claim that sought to recover unpaid contributions withheld because of alleged fraudulent misrepresentations. 758 F. Supp. 2d 607, 614–17 (N.D. Ill. 2010). The *Lake City Janitorial* court found that *Biondi*'s first two prongs were not implicated, while examining the third in greater depth. *Id.* at 614–15. Because a state law claim may act as an alternative enforcement mechanism to ERISA where "the existence of a pension plan is a critical element of a state-law cause of action," the court compared the elements of common law fraud with the complaint's allegations, concluding that the allegations did not depend on the CBA to plead fraud. *Lake City Janitorial*, 758 F. Supp. 2d at 615–17 (quoting *Biondi*, 303 F.3d at 776). Thomas and Michael have not addressed *Lake City Janitorial*'s well-reasoned analysis, which the Court adopts. *See Metro. Life Ins. Co. v. Yitao Sun*, No. 12 C 6036, 2013 WL 4759586, at *11 (N.D. Ill. Sept. 4, 2013) (noting plaintiff's silence in failing to distinguish *Biondi* provided another ground—

9

forfeiture—to deny dismissal of a common law fraud claim based on ERISA preemption). Nor have they met their burden to show that ERISA was intended to supplant the Funds' common law fraud claim. *See Fletcher v. ZLB Behring LLC*, No. 05 C 2695, 2006 WL 218164, at *6 (N.D. Ill. Jan. 27, 2006) (finding that defendant had "failed in its burden of overcoming the presumption that Congress did not intend for ERISA to supplant common law fraudulent misrepresentation and concealment claims"). Instead, the allegations of the complaint suggest that the CBA need only be referenced to determine the extent of Thomas and Michael's liability, and not their liability for fraud itself. *Id.* As a result, the Court finds that the Funds' fraud claim is not preempted.[3] *See Biondi*, 303 F.3d at 781 (one's "decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law").

## III. Piercing the Corporate Veil (Count IV)

The Funds also seek to pierce the corporate veil and hold Thomas and Michael personally liable for all amounts for which Green Demolition and M.B. Ruff are found liable. Thomas and Michael's only argument for dismissal is that because the underlying claims fail, they cannot be held personally liable as well.[4] But because the Court has already found that the underlying

---

[3] In reply, Thomas and Michael also argue that the fraud claim fails because it does not allege any improperly paid contributions and is not pleaded with specificity in compliance with Federal Rule of Civil Procedure 9(b). The Court need not address these arguments because they were raised too late. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). Thomas and Michael also raise a standing issue in footnotes in both the opening memorandum and reply, but the Court will not address this undeveloped argument. *See Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("[A] party can waive an argument by presenting it only in an undeveloped footnote."); *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them.").

[4] As with the fraud claim, Thomas and Michael argue in reply that the Funds have not pleaded fraud with specificity as required by Rule 9(b) in connection with their request to pierce the corporate veil. But this argument is also waived because it was raised for the first time in reply. *See Dexia Credit Local*, 629 F.3d at 625.

claims can go forward, the Funds' request to pierce the corporate veil proceeds to discovery as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [13] is denied. Defendants' answer is due January 28, 2016.

Dated: January 6, 2016

SARA L. ELLIS
United States District Judge